**Dated: February 8, 2013**

**The following is ORDERED:**



*Tom R. Cornish*
TOM R. CORNISH
UNITED STATES BANKRUPTCY JUDGE

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE:

CHARLOTTE JEANNE JOHNS,            Case No. 12-80163-TRC
                                                                                                      Chapter 7
       Debtor.

SHEREE L. HUKILL,
       Plaintiff

v.                                                                                                              Adversary No. 12-8016-TRC

CHARLOTTE JEANNE JOHNS,
            Defendant.

## OPINION

Plaintiff obtained a default judgment against Defendant and seeks to deny Defendant's discharge pursuant to 11 U.S.C. § 727(a)(4)(A), or, alternatively, to except the judgment debt from discharge pursuant to 11 U.S.C. § 523(a)(6).[1] Having heard the testimony of the parties at trial on

___

[1] Unless otherwise stated, all future statutory references are to title 11 of the United States Code.

December 21, 2012, and reviewed the evidence presented, the Court determines that Plaintiff did not meet her burden of proof, and finds in favor of Defendant.

FINDINGS OF FACT

The parties stipulated to some basic facts which are set forth in the Pre-Trial Order. Essentially, the stipulated facts involve a lawsuit Hukill filed in federal court in the Northern District of Oklahoma, based upon her termination of employment by the Oklahoma Native American Domestic Violence Coalition d/b/a Spirits of Hope ("Spirits of Hope"). Hukill is an attorney who was employed by Spirits of Hope in 2003. She was paid through a grant program from the Department of Justice. Johns was a member of the Spirits of Hope Board and served as its Secretary. She received no compensation for serving on the Board. In 2004, Johns voted along with other members of the Board to terminate Hukill's employment. Johns voted for termination upon the recommendation of the Spirits of Hope Executive Director Pauline Musgrove because of issues regarding Hukill's job performance. Prior to termination, the Board sent Hukill a letter instructing her not to take certain actions on behalf of Spirits of Hope. In voting for Hukill's termination, Johns recognized that Hukill would likely suffer financially. However, it was never Johns' intent to harm or injure Hukill. Her vote to terminate employment was because she believed Hukill was taking actions that were detrimental to the mission of Spirits of Hope.

Hukill filed suit against Spirits of Hope, Musgrove, and individual board members for employment discrimination under 42 U.S.C. § 1981, breach of implied contract, negligence and intentional infliction of emotional distress. Johns failed to answer or otherwise defend herself in the case. Hukill obtained a default judgment against Johns, Musgrove, Spirits of Hope, and other Board members, jointly and severally, for $ 111,311.82, plus interest, costs of $ 1,080.63, and attorney's

fees of $ 8,795.² The default judgment was entered after an evidentiary hearing to address the issue of damages. The United States District Court, Northern District of Oklahoma, found that Hukill was entitled to relief on two of her four causes of action: her claims of employment discrimination and breach of implied contract. She was awarded lost wages, lost benefits, out-of-pocket counseling expenses, and $ 16,000 in damages for emotional distress. The court found that the evidence did not support an award of punitive damages, stating that, as to her claim of discrimination under § 1981, Hukill "did not present sufficient evidence that defendants acted 'with malicious, willfull or gross disregard of a plaintiff's rights over and above intentional discrimination.'"³

Johns explained to this Court that she failed to answer or otherwise defend herself against Hukill's lawsuit because she never received notice of it until after the judgment was entered. She also believed that an attorney would represent the Board if any legal action was pursued by Hukill. Johns' judgment was not appealed, and she acknowledged that the time for appeal had long since expired.

Hukill attempted to collect her judgment against the defaulting defendants, including Johns.⁴

---

²The default judgments against defendants Musgrove and Spirits of Hope were later vacated by the Tenth Circuit Court of Appeals for improper service. *See Hukill v Okla. Native American Domestic Violence Coalition*, 542 F.3d 794 (10th Cir. 2008). The docket sheet of the federal district court case reflects that, upon remand from the Tenth Circuit, Hukill, Musgrove and Spirits of Hope entered into a stipulation of dismissal and release of judgment (*Docket Entry 82,* Case No. 06-CV-0662-CVE-PJC). Their agreed dismissal expressly states that it does not affect the default judgments against the other co-defendants. This Court heard no evidence as to how much money was paid for the release of the judgment, if in fact anything was paid for the release.

³*Docket Entry 12-1*, Case No. 06-CV-0662-CVE-PJC, Default Judgment, p. 2, citations omitted.

⁴Hukill told this Court that she had only recovered approximately $ 2,600 on her judgment, and that payment came from three defendants: Dooley, Knifechief-Thompson, and

She filed her judgment of record in the District Court of Pontotoc County, State of Oklahoma. Hukill attempted to garnish Johns' wages but Johns filed a claim for exemption. Apparently, no hearing on the exemption was held. Hukill hired an attorney, Penny L. Pricer, to attempt to collect on the judgment. An asset hearing was held before Judge Kessinger in Pontotoc County. Johns was sworn in by the judge. She explained that she was a guardian for her husband, who had suffered a severe brain injury in a motorcycle accident in 2010. She also informed the judge and Pricer that she needed to leave the hearing early to pick up her grandchild from school. She and Pricer left the courtroom and met in an adjacent room. Johns reported that she was unemployed and received unemployment compensation, therefore she could not pay anything on the judgment. She did not have all the documents subpoenaed by Hukill. She told Pricer that she owned some rings, earrings, and possibly a necklace. She also disclosed that she had a mineral interest in another state from her mother, but was very vague about that interest. At some point she mentioned that her husband had a bank account that was payable to her on his death. She gave a verbal accounting of her expenses but no other documentation. Pricer recalled that Johns did not believe she owed anything to Hukill and that she refused to pay anything to Hukill. Johns' explanation for failing to pay the judgment was that she was unemployed and had no assets with which to pay Hukill. Johns left the asset hearing before Pricer had completed her questions and without notifying the judge. Johns explained that she was not instructed to report back to the judge before leaving, so she was unaware that she should not leave the courthouse.

      Hukill filed an application for citation for contempt against Johns, which was issued by Judge

---

Leverett. To the extent she received any payment on the judgment, her claim against Johns would be reduced.

Kessinger and served on Johns. A hearing was held wherein Johns plead not guilty to the contempt charge. The court allowed Pricer to conduct another asset hearing. Johns presented additional documentation requested by Pricer, but no payment schedule was agreed upon. The asset hearing was continued to March 7, 2012, and Johns was to bring additional information regarding tax returns, proof of income and unemployment compensation, proof of employment searches, personal retirement account information, bank statements, and guardianship information regarding John's husband.

Johns filed her Chapter 7 bankruptcy in this Court on February 13, 2012. On Schedule A, she listed an interest in real property consisting of an undivided fractional interest in restricted Indian Trust land, including mineral interests, in New Mexico, and a burial plot in Ada, Oklahoma. She listed various items of personal property on Schedule B, including a ten year old car, household goods and furnishings, clothing, a wedding ring, security deposits, and approximately $ 5,600 in an IRA. She claimed all of the property as exempt on Schedule C. Hukill's debt was listed on Schedule F, along with five other judgment debts, and other debts. She listed priority tax claims of approximately $ 27,000 on Schedule E. Her average monthly income was reported as $ 1,469 in unemployment benefits and $ 165 in oil and gas royalties. She reported her non-debtor husband's monthly income as $ 770 in social security benefits and $ 1,700 in veterans benefits.

Johns admitted that she failed to list on her bankruptcy schedules a sterling silver necklace, a pair of sterling silver with turquoise earrings, and a sterling silver bracelet. At her 341 meeting, she informed the Chapter 7 Trustee that she needed to amend her Schedule B to include these pieces of jewelry. After obtaining an appraisal of these items, she amended Schedule B. The appraised value of this additional personal property was listed as follows: sterling silver necklace at $250;

sterling silver with turquoise earrings at $30; and sterling silver bracelet at $25. She stated that she had no intent to hide any assets, and that she intended to fully and completely list all assets in her schedules. In addition to Hukill's judgment, Johns had numerous financial problems that precipitated filing the bankruptcy. The Trustee filed a Report of No Distribution.

## CONCLUSIONS OF LAW

Hukill seeks to avoid having her judgment against Johns discharged either through denying a discharge of all debts through § 727(a)(4)(A), or by excepting this particular debt under § 523(a)(6).

A.   Section 727(a)(4)(A)

With the exception of the types of debt listed in § 523, a discharge in bankruptcy discharges the debtor from all debt that arose before bankruptcy.[5] This discharge of debt is "a central purpose" of the Bankruptcy Code so that debtors can receive a fresh start.[6] Thus, grounds for denying a discharge under § 727 are to be narrowly construed.[7] The burden of proving a ground for objection to discharge is on the party objecting to the discharge.[8] Hukill must show by a preponderance of the evidence that grounds exist to support denial of the discharge.[9]

To deny a discharge under § 727(a)(4)(A), a creditor must demonstrate that the debtor

---

[5] 11 U.S.C. § 727(b).

[6] *Standiferd v. U.S. Trustee,* 641 F.3d 1209, 1212 (10th Cir. 2011)(citations omitted).

[7] *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1292-93 (10th Cir. 1997).

[8] Fed. R. Bankr. P. 4005.

[9] *See Grogan v. Garner*, 498 U.S. 279, 288-90 (1991); *Mathai v. Warren (In re Warren)*, 512 F.3d 1241 (10th Cir. 2008); *First Nat'l Bank of Gordon v. Serafini (In re Serafini)*, 938 F.2d 1156 (10th Cir. 1991).

knowingly and fraudulently made a false oath, and that the oath relates to a material fact.[10] Simply making a false oath is not enough to deny a discharge where the false statement is due to mere mistake or inadvertence.[11] "An honest error or mere inaccuracy is not a proper basis for denial of discharge."[12]

Hukill alleges that Johns' omission of assets from her bankruptcy schedules was intentional and fraudulent. Johns admitted that she failed to list the jewelry. However, she stated that this was an oversight, and she advised the Chapter 7 Trustee at her 341 meeting that she needed to amend her Schedule B to include the jewelry. She obtained an appraisal of these items and did indeed file an amended Schedule B, listing the value according to the appraised value. Johns rectified the omission in a timely manner. The value of these assets was minimal, not material. The fact that Johns disclosed this omission to the Trustee, then corrected the mistake in a prompt manner, is strong evidence to this Court that she had no fraudulent intent in omitting the jewelry from her schedules.[13]

Johns is also alleged to have omitted other assets consisting of an interest in her husband's separate bank account that is payable to her on his death, and a fractional ownership interest in restricted Indian Trust land in New Mexico. The fractional ownership interest is clearly listed on Schedule A, so there was no omission of that asset. The payable on death bank account of her non-debtor husband is not property of the estate that is required to be listed on her schedules. Normally, any legal or equitable interest debtor has in property as of the date the petition is filed is considered

---

[10]*Brown*, 108 F.3d at 1294.

[11]*Brown*, 108 F.3d at 1294-95.

[12]*Id.* at 1295.

[13]*Id.*

property of the estate.[14]  Section 541(a)(5)(A) expands this to include property the debtor acquires up to 180 days after the petition is filed if the property is acquired by bequest, devise or inheritance. Questions regarding "property" and "interests in property" are determined by state law.[15]  Under Oklahoma law, a payable on death bank account is a contract between the depositor and the bank, and is exempt from the requirements for a valid testamentary disposition or of a gift.[16]  Such an account is owner-controlled: the owner retains sole ownership of it during his lifetime, and may withdraw the proceeds, change the name of the beneficiary, or even close the account.  Oklahoma law provides that only upon the death of the owner of the account shall a bank pay over any proceeds to the named beneficiary.[17]  Thus, Johns' interest in the account does not arise until her husband's death and is not property of the estate that needed to be reported on her schedules.  Had her husband died within 180 days after she filed bankruptcy, she could simply have amended her schedules to add any proceeds, assuming those proceeds qualify as a "bequest, devise or inheritance."[18]  Failure to list the account is not grounds to deny her discharge.

The Court therefore finds that Hukill has failed to prove by a preponderance of the evidence

---

[14] § 541(a)(1).

[15] *In re Hall*, 441 B.R. 680, 687 (10th Cir. BAP 2009).

[16] *See* Okla. Stat. tit. 6, 901(B) regarding payable on death bank accounts, and exempting them from execution requirements for a last will in Okla. Stat. tit. 84, §§ 41-57.  *See also In re Estate of Fields*, 46 P.3d 176, 2002 OK CIV APP 14.

[17] Okla. Stat. tit. 6, 901(B).

[18] *See In re Hall*, 441 B.R. 680, 688-89, 690-91 (10th Cir. BAP 2009) (majority of bankruptcy courts have held that § 541(a)(5) does not reach beneficial interests of revocable inter vivos trusts, and debtor's interest in payable on death accounts was mere expectancy, not legal or equitable interest).

the elements required to deny Johns' discharge under § 727(a)(4). Therefore, Hukill does not prevail on this cause of action.

B.    Section 523(a)(6)

The grounds for denying a discharge under § 727(a) are wholly separate from those for excepting a single debt under § 523(a). Exceptions to discharge are to be narrowly construed, with any doubt being resolved in the debtor's favor.[19] The burden of proof for establishing an exception to discharge under § 523 is the same as that for denying a discharge: a preponderance of the evidence.[20]

To except a debt from discharge under 523(a)(2)(6), Hukill must prove that Johns caused a "willful and malicious injury." This means that Hukill must show a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. ... Intentional torts generally require that the actor intend 'the consequence of an act' not simply the act itself."[21]

Hukill argued at trial that the willful and malicious elements should be deemed admitted by Johns and that she has waived the right to defend this action since she defaulted in the federal court action in failing to answer or defend. She argues that the default judgment is based upon an intentional act of discrimination, as well as breach of implied contract. She requests that this Court give full faith and credit to the default judgment.

The Court interprets her waiver argument and request for full faith and credit as a request to give preclusive effect to the default judgment and bar relitigation of the issues under § 523(a)(6).

---

[19]*In re Sandoval*, 541 F.3d 997, 1001 (10th Cir. 2008)(citations omitted).

[20] *Grogan v. Garner*, 498 U.S. 279, 286-88 (1991).

[21]*Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).

To determine whether a federal court judgment should be given preclusive effect we must look to federal law.[22] Under federal law, "issue preclusion attaches only '[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment.' "[23] Where a judgment is "entered by confession, consent, or default, none of the issues is actually litigated."[24]

Hukill's judgment fails to satisfy these requirements. The default judgment states that an evidentiary hearing was held "to address the legal and factual issues pertaining to plaintiff's damages." There is no indication that an adjudication on the merits was made, although the court did find that Hukill was only entitled to relief on two of her four causes of action. That court also found that she had NOT presented sufficient evidence of malicious, willfull or gross disregard of her rights, above that of intentional discrimination. Contrary to Hukill's assertion in her proposed findings of fact and conclusions of law[25], there is no specific finding in the default judgment nor in the Tenth Circuit decision that Johns' vote to terminate Hukill's employment was a willful and intentional act of racial discrimination.[26] There was simply a finding that Hukill was entitled to

---

[22]*McCart v. Jordana (In re Jordana)*, 232 B.R. 469, 475 (10th Cir. BAP 1999), *aff'd* 216 F.3d 1087 (Table) (10th Cir. 2000).

[23]*In re Corey.* 583 F.3d 1249, 1251 (10th Cir. 2009) (quoting *Arizona v. California*, 530 U.S. 392, 414, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000) (quoting *Restatement (Second) of Judgments § 27*, at 250 (1982)) (brackets in *Arizona)).*

[24]*Restatement (Second) of Judgments, §27* cmt. e (1982).

[25]*Docket Entry 43, p. 13.*

[26]*See Hukill*, 542 F.3d at 796, n. 3. The Tenth Circuit opinion is only concerned with the appeals of Musgrove and Spirits of Hope as to whether they were properly served. That Court expressly stated that it was not considering "contentions regarding the culpability of defendants' conduct, whether they have a meritorious defense, or prejudice to Ms. Hukill."

default judgment because the defendants were properly served, failed to answer or file a responsive pleading, and the Court Clerk had entered default. The issues were not "actually litigated," Johns did not appear and testify, nor did she participate in any way in that proceeding. The default judgment is not entitled to be given preclusive effect in this adversary proceeding.

Based upon the evidence presented and the findings of this Court, Johns did not intend to discriminate against Hukill in voting to terminate her employment. Johns' decision was the result of her belief that the action was necessary to protect Spirits of Hope and that Hukill was acting to the detriment of the agency. There was no evidence of an intent to discriminate against Hukill, no improper motive in voting to terminate, nor of any intent to harm Hukill in any way. Therefore, the Court cannot find that there was a willful or deliberate intent to discriminate or otherwise harm Hukill. Without that, Hukill cannot prevail.

However, even if this Court found that the default judgment should be given preclusive effect regarding an intent to discriminate, the Court cannot find that the evidence is sufficient to except the judgment from discharge. Under 523(a)(6), Hukill must prove both a willful and malicious injury, that is, an intent to act in such a way as to cause the specific injury that occurred.[27] The fact that Johns may have committed the tort of intentional discrimination does not mean that everything that happened to Hukill following the vote was intended by Johns.[28] Hukill must prove that Johns acted with the requisite malice contemplated by § 523(a)(6). This requires evidence that Johns intended to cause Hukill's injury or that Johns intentionally took an action that was substantially certain to

---

[27] *Panalis v. Moore (In re Moore),* 357 F.3d 1125, 1129 (10th Cir. 2004).

[28] *Id.* at 1128.

cause the injuries that occurred.[29]

The Court finds that there is virtually no evidence to establish that Johns intended to cause the injuries Hukill complains of: lost wages, benefits, counseling expenses, emotional distress, and damage to reputation. The evidence established that Johns' vote to terminate was to protect Spirits of Hope. While Johns did acknowledge that termination of employment was likely to have financial consequences, she did not vote so as to cause financial harm. There was no malice reflected in Johns' explanation of her vote or her recitation of the events surrounding the termination. There was no indication whatsoever that Johns' vote was cast with the intent to cause injury to Hukill.[30] There was no showing of a knowing disregard of Hukill's rights. Johns provided just cause for her vote. The Court also notes that the default judgment itself includes a finding that there is insufficient evidence of malice over and above an intent to discriminate. Thus, there is no willful and malicious, deliberate or intentional injury by Johns against Hukill that supports an exception to discharge under § 523(a)(6).

Hukill also alleges that her judgment should not be discharged due to numerous other intentional acts to harm her by Johns during the collection phase and in her bankruptcy. However, there is no separate debt, claim or right to payment from Johns for these actions. The debt that Hukill seeks to except is the judgment. Perhaps Hukill believes that Johns' behavior in failing to fully comply with her subpoenas, failing to offer to pay some amount on the judgment, and failing to participate in mediation is evidence of bad faith or a pattern of willful and malicious behavior that causes the judgment to be excepted from discharge. However, Johns adequately explained the

---

[29]*Id.* at 1129.

[30]*Geiger*, 523 U.S. at 61.

reasons for her actions, she did respond to the summons to appear in state court, and she did provide some of the documentation requested. Johns exhibited more cooperation than many debtors this Court observes. The Court cannot agree that Johns' post-judgment conduct prevents her from discharging her debt to Hukill. Johns filed bankruptcy as was her right to do in accordance with the requirements of the Bankruptcy Code. She did so because she had many financial difficulties, as do most people who file bankruptcy. This does not suffice to except Hukill's claim from discharge.

## CONCLUSION

Based upon the findings of fact and conclusions of law set forth herein, Plaintiff Hukill's request to deny Defendant Johns' discharge is denied. Plaintiff Hukill's request to except her debt from discharge is also denied. A separate judgment consistent with this Opinion is entered concurrently herewith.

###